# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. STEPHEN MCMULLEN, | ) ) ) | No. 3:12-cv-00501 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Judge Campbell |
| ASCENSION HEALTH, SETON CORPORATION (D/B/A BAPTIST HOSPITAL), HICKMAN COMMUNITY HEALTH CARE SERVICES, INC. (D/B/A HICKMAN COMMUNITY HOSPITAL), and MIDDLE TENNESSEE MEDICAL CENTER, INC. | ) ) ) ) ) ) ) ) | Magistrate Judge Griffin

Oral Argument Requested |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT FOR DAMAGES

THOR Y. URNESS (TENN. BAR NO. 13641)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street
Suite 700
Nashville, TN 37203-0025
Phone: (615) 244-2582
Fax: (615) 252-6380
Email: turness@babc.com

GREGORY M. LUCE (ADMITTED PRO HAC VICE)
MAYA P. FLORENCE (ADMITTED PRO HAC VICE)
JAMES C. BUCK (ADMITTED PRO HAC VICE)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005
Phone: (202) 371-7000
Fax: (202) 393-5760
Email: gregory.luce@skadden.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

    A.    The Parties ................................................................................................ 2

          1.    Stephen McMullen ................................................................... 2

          2.    Ascension Health ..................................................................... 3

          3.    The Hospital Defendants .......................................................... 4

    B.    The Amended Complaint .......................................................................... 4

    C.    The Medicare Program ............................................................................. 6

ARGUMENT ............................................................................................................... 8

I.    THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD THAT
ANY DEFENDANT KNOWINGLY PRESENTED OR CAUSED THE
PRESENTATION OF FALSE CLAIMS. .............................................................. 9

    A.    The Amended Complaint Does Not Plead a Claim Against Baptist. ...................... 9

          1.    No Fraudulent Scheme By Baptist Is Alleged With Particularity. ............ 10

          2.    None Of The LCDs Identified In The Amended Complaint
Applied To Baptist Or Constituted A Condition Of Payment. ................. 12

          3.    The Amended Complaint Does Not Allege Presentment Of Even A
Single False Claim By Baptist. ............................................................. 15

          4.    The Amended Complaint Does Not Adequately Allege Scienter. ............ 18

    B.    The Amended Complaint Does Not Plead a Claim Against Hickman or
Middle Tennessee. ................................................................................. 19

    C.    The Amended Complaint Does Not Plead Any FCA Violation By
Ascension. ............................................................................................. 20

II.    THE AMENDED COMPLAINT FAILS TO IDENTIFY ANY FALSE
RECORD OR STATEMENT BY ANY DEFENDANT .................................................. 23

III.    THE AMENDED COMPLAINT DOES NOT IDENTIFY THE ELEMENTS OF
A CONSPIRACY. ............................................................................................ 24

IV.      THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
          PREJUDICE BECAUSE FURTHER AMENDMENT WOULD BE FUTILE. ...............24

CONCLUSION ...........................................................................................................................25

Case 3:12-cv-00501   Document 57   Filed 08/20/13   Page 3 of 34 PageID #: 828

**CASES**

*Arvest Bank v. Byrd*,
    814 F. Supp. 2d 775 (W.D. Tenn. 2011)..........................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................8

*Chesbrough v. VPA, P.C.*,
    655 F.3d 461 (6th Cir. 2011) ................................................................................. *passim*

*City of Monroe Employees Retirement System v. Bridgestone Corp.*,
    399 F.3d 651 (6th Cir. 2005) ...............................................................................................12

*EEOC v. Jeff Wyler Eastgate, Inc.*,
    No. 1:03CV662, 2006 WL 2785774 (S.D. Ohio Jan. 9, 2006).........................................21

*EEOC v. Ohio Edison Co.*, 7 F.3d 541 (6th Cir. 1993) ..............................................................25

*Mikes v. Straus*,
    274 F.3d 687 (2d Cir. 2001)..........................................................................................10, 18

*Sanders v. Allison Engine Co.*,
    703 F.3d 930 (6th Cir. 2012) ................................................................................................9

*Sanderson v. HCA-The Healthcare Co.*,
    447 F.3d 873 (6th Cir. 2006) .......................................................................8, 16, 18, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................................................................21

*Terry v. Tyson Farms, Inc.*, 604 F.3d 272 (6th Cir. 2010).........................................................19

*United States ex rel. Augustine v. Century Health Servs., Inc.*,
    289 F.3d 409 (6th Cir. 2002) ..............................................................................................10

*United States ex rel. Bledsoe v. Community Health Systems, Inc.*,
    342 F.3d 634 (6th Cir.2003) (*Bledsoe I*)............................................................................25

*United States ex rel. Bledsoe v. Community Health Systems, Inc.*,
    501 F.3d 493 (6th Cir. 2007) (*Bledsoe II*) ............................................................... *passim*

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
    290 F.3d 1301 (11th Cir. 2002) ...............................................................16, 20

*United States ex rel. Conner v. Salina Regional Health Center, Inc.*,
    543 F.3d 1211 (10th Cir. 2008) ......................................................................10

*United States ex rel. Dennis v. Health Mgmt. Assocs.*,
    No. 3:09-cv-00484, 2013 WL 146048 (M.D. Tenn. Jan. 14, 2013) .................24

*United States ex rel. Hobbs v. MedQuest Assocs.*,
    711 F.3d 707 (6th Cir. 2013) ..........................................................................15

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
    498 F. Supp. 2d 25 (D.D.C. 2007) .............................................................20, 22

*United States ex rel. Judd v. Maloy*,
    No. 3:03-CV-241, 2006 WL 2583318 (S.D. Ohio Sept. 6, 2006) ....................24

*United States ex rel. Lamers v. City of Green Bay*,
    168 F.3d 1013 (7th Cir. 1999) ........................................................................18

*United States ex rel. Lisitza v. Par Pharm. Cos.*,
    No. 06-C-06131, 2013 WL 870623 (N.D. Ill. Mar. 7, 2013) ...........................23

*United States ex rel. Marlar v. BWXT Y-12, L.L.C.*,
    525 F.3d 439 (6th Cir. 2008) ...............................................................8, 18, 24

*United States ex rel. Nathan v. Takeda Pharm. N.Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ..........................................................................16

*United States ex rel. Piacentile v. Sanofi Synthelabo, Inc.*,
    No. 05-2927, 2010 WL 5466043  (D.N.J. Dec. 30, 2010).................................24

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*,
    532 F.3d 496 (6th Cir. 2008) ..........................................................................23

*United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.*, Nos. 5:00-cv-39-M
    & 5:99-cv-170-M, 2004 WL 2403114 (W.D. Ky. Sept. 30, 2004) ..................20

*United States ex rel. West v. Ortho-McNeil Pharm., Inc.*,
    No. 03 C 8239, 2007 WL 2091185 (N.D. Ill. July 20, 2007) ...........................20

*United States v. Prabhu*,
    442 F. Supp. 2d 1008 (D. Nev. 2006) .............................................................14

*Willowood of Great Barrington, Inc. v. Sebelius*,
    638 F. Supp. 2d 98 (D. Mass. 2009) ...............................................................15

iv

# STATUTES, REGULATIONS, AND RULES

Fraud Enforcement and Recovery Act, Pub. L. No. 111-21, 123 Stat. 1617 (2009) ......................9

Medicare Prescription Drug, Improvement and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (2003) ........................................................................7

31 U.S.C. § 3729 ................................................................................... *passim*

31 U.S.C. § 3730 .............................................................................................2

42 U.S.C. § 1395c .............................................................................................6

42 U.S.C. § 1395h .............................................................................................7

42 U.S.C. § 1395k(a)(2)(B) .............................................................................6

42 U.S.C. § 1395x .............................................................................................7

42 U.S.C. § 1395y .......................................................................................7, 17

42 U.S.C. § 1395bb(a) .....................................................................................4

42 U.S.C. § 1395ff .......................................................................................7, 8

42 U.S.C. § 1395kk-1(a) .................................................................................7

42 C.F.R. § 410.28(e)(1) ...............................................................................11

42 C.F.R. § 410.32(b)(3)(i) ...........................................................................11

42 C.F.R. § 405.1060 .......................................................................................7

42 C.F.R. § 405.1062 .....................................................................................15

Medicare Program: Review of National Coverage Determinations and Local Coverage Determinations, 68 Fed. Reg. 63,692, 63,693 (Nov. 7, 2003) ..............................8, 14, 15

Fed. R. Civ. P. 8(a) ................................................................................. *passim*

Fed. R. Civ. P. 9(b) ................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................... *passim*

Fed. R. Evid. 201(b) ...........................................................................12, 13, 21

Case 3:12-cv-00501   Document 57   Filed 08/20/13   Page 6 of 34 PageID #: 831

# OTHER AUTHORITIES

CMS, Medicare Claims Processing Manual, Pub No. 100-04, Chap. 1 § 10.1
    (Rev. 1, Oct. 1, 2003) ..........................................................................................7

CMS, Medicare Claims Processing Manual, Pub. 100-04, Chap. 1 § 10.2
    (Rev. 1, Oct. 1, 2003) ....................................................................................7, 13

CMS, Medicare Program Integrity Manual,, Pub. 100-08, Chap. 13 § 13.5
    (Rev. 443, Effective: Jan. 15, 2013) ..............................................................13

Defendants Ascension Health ("Ascension"), Seton Corporation (d/b/a Baptist Hospital) ("Baptist"), Hickman Community Health Care Services, Inc. (d/b/a Hickman Community Hospital) ("Hickman"), and Middle Tennessee Medical Center, Inc. ("Middle Tennessee") (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Relator's Amended Complaint for Damages Under the False Claims Act, 31 U.S.C. § 3729, *et. seq.* (the "Amended Complaint") pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) (the "Motion").[1]  For the reasons set forth more fully below, the Court should grant the Motion and dismiss the Amended Complaint with prejudice.

## PRELIMINARY STATEMENT

Stephen McMullen, a serial relator, has sued the Catholic nonprofit corporation Ascension Health and three of its affiliated hospitals in Tennessee under the False Claims Act ("FCA").  After implicitly conceding that his initial complaint was deficient by filing the Amended Complaint without opposing Ascension's prior motion to dismiss, McMullen's second attempt remains factually and legally inadequate.  He fails to identify any claims submitted to Medicare for the diagnostic tests he alleges were not performed in accordance with local Medicare contractor coverage determinations (Local Coverage Determinations or "LCDs"); indeed, he fails to even identify which LCDs applied to the Defendants and at what times.  In any event, the LCDs he refers to are merely contractor interpretations that do not create legally binding conditions of payment by Medicare.  And, even if such LCDs did set a billing and

---

[1]    As a matter of public record, in July 2013, Baptist, Hickman, and Middle Tennessee were renamed to reflect their common participation in the Saint Thomas Health Ministry.  Baptist is now known as Saint Thomas Midtown Hospital, Hickman is now known as Saint Thomas Hickman Hospital, and Middle Tennessee is now known as Saint Thomas Rutherford Hospital. For ease of reference, Defendants will refer to these facilities as Baptist, Hickman, and Middle Tennessee.

payment condition, the failure to meet such standards without more would not constitute an FCA violation. A relator also must allege facts demonstrating that claims were knowingly submitted despite such regulatory failings to state a claim under the FCA. The Amended Complaint contains literally no factual allegations of scienter, only conclusory paraphrasing of FCA provisions.

Given McMullen's scant ten-month tenure at Baptist and lack of experience at any other Ascension-affiliated facility, it is understandable that the Amended Complaint is short on necessary detail. McMullen's lack of information is most clearly demonstrated by the utter void of any facts regarding Hickman and Middle Tennessee. Similarly, the Amended Complaint offers no facts showing Ascension in any way "operated" the Defendant hospitals, much less that it "caused" the submission of false claims by those facilities. As for facts demonstrating use of a "false statement" to secure Medicare payments or a conspiracy to violate the FCA, none are alleged.

The Amended Complaint reveals that McMullen has no facts to support his fraud theory against any Defendant, that it is legally inadequate when tested against the standards of Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6), and that it should be dismissed with prejudice.

## STATEMENT OF FACTS

### A.     The Parties

#### 1.     Stephen McMullen

Stephen McMullen, a registered vascular technologist who worked for Baptist from September 2011 through July 2012, claims status as a relator under 31 U.S.C. § 3730(b). (Am.

Compl. ¶¶ 1, 33.)[2]  Based exclusively on this ten-month experience at Baptist, McMullen also sues Ascension as well as Hickman and Middle Tennessee, where he never worked.[3]

### 2. Ascension Health

McMullen alleges that Ascension "is a non-profit corporation" that "operates healthcare facilities in more than 500 locations in over 20 states. "  (*Id.* ¶¶ 2, 5.)  In law and in fact, Ascension, organized as a Missouri domestic non-profit corporation, is "a Catholic national health system consisting primarily of nonprofit corporations."  (*See* Ex. 1, Ascension Health Alliance Consolidated Financial Statements at 8; *see also generally* Ex. 2, Ascension Health Articles of Amendment for Nonprofit Corporation.)[4]  In turn, these nonprofit corporations "own and operate local health care facilities, or Health Ministries, located in 21 of the United States and the District of Columbia."  (Ex. 1 at 8.)

---

[2]  McMullen's acknowledgment that he only worked at Baptist between September 2011 and July 2012 contradicts his allegations that he was employed "[a]t all times relevant" to the Amended Complaint and "witnessed the events as set forth" in the Amended Complaint.  (Am. Compl. ¶ 4.)  While the Amended Complaint includes allegations "since at least 2008 and possibly since 2002" (*id.* ¶ 2), McMullen lacks any first-hand knowledge prior to September 2011 or after July 2012.

[3]  This is not the only time McMullen has attempted to parlay limited employment experience into an expansive FCA suit concerning Medicare claims for noninvasive vascular diagnostic studies.  On the same day he filed his original complaint in this action, McMullen filed a virtually identical complaint against HCA Holdings, Inc., following a five-month period of employment at an HCA-affiliated hospital in Hendersonville, Tennessee.  (Motion, Ex. B, Dkt. 1, *United States ex rel. McMullen v. HCA Holdings, Inc.*, No. 3:12-cv-00502 (M.D. Tenn., filed May 18, 2012).)  McMullen has also filed FCA complaints relating to noninvasive vascular diagnostic studies against a health clinic he worked at for two months and against Cigna Government Services, a Medicare contractor that he alleged failed to comply with its own LCD.  (*See* Motion Ex. C, Dkt. 1, *United States ex rel. McMullen v. The West Clinic, P.C.*, No. 2:08-cv-2587-BBD-cgc (W.D. Tenn., filed Sept. 10, 2008) and Motion Ex. D, Dkt. 1, *United States ex rel. McMullen v. Cigna Gov't Servs., LLC*, No. 2:08-cv-02586-SHM-tmp (W.D. Tenn., filed Sept. 10, 2008).)  McMullen voluntarily dismissed both cases.

[4]  Unless otherwise indicated, exhibit references herein are to the exhibits attached to the Declaration of James Buck filed as Exhibit A to the Motion.

3

### 3. The Hospital Defendants

Baptist operates a 683 licensed bed hospital in Nashville, Tennessee. Hickman operates a critical access hospital with 65 licensed beds in Centerville, Tennessee. Middle Tennessee operates a 286 licensed bed hospital in Murfreesboro, Tennessee. Baptist, Hickman, and Middle Tennessee participate in the Medicare program and each is accredited by the Joint Commission (formerly known as the Joint Commission on the Accreditation of Healthcare Organizations), reflecting that these hospitals meet or exceed operational and organizational requirements for participation in the Medicare program. *See* 42 U.S.C. § 1395bb(a).

### B. The Amended Complaint

McMullen's Amended Complaint is entirely founded upon his interpretation of Local Coverage Determinations ("LCDs") allegedly issued by Cigna Government Services ("Cigna"), Wisconsin Physicians Services Insurance Corporation ("WPS"), and Cahaba Government Benefit Administrators, LLC ("Cahaba") – Medicare contractors he alleges "service, or have serviced, Tennessee." (Am. Compl. ¶¶ 17-19.)[5] McMullen alleges that these LCDs establish Medicare "reimbursement criteria" for noninvasive vascular diagnostic studies, the violation of which, without more, constitute false claims. (*Id.* ¶¶ 18-19) According to McMullen, these LCDs required noninvasive vascular diagnostic studies to be performed either: (1) "by a physician or under the general supervision of a physician credentialed in vascular technology"; (2) "by a technician certified in vascular technology"; or (3) "in facilities with laboratories accredited in vascular technology." (*Id.* ¶ 26.) No specific LCD is identified as the source of

---

[5] Although the Amended Complaint represents that applicable LCDs are attached as Exhibit A (Am. Compl. ¶¶ 17-19), as with his previous complaint, McMullen provides no actual LCDs. Instead, the Amended Complaint purports to attach excerpts from LCDs printed from the website of the Intersocietal Accreditation Commission for Vascular Testing, which do not even include an excerpt of Cigna's alleged LCD or Article for Tennessee. (*See id.*, Ex. A.)

these alleged "reimbursement criteria."

McMullen alleges that certain technologists performing noninvasive vascular diagnostic studies at Baptist were not certified as vascular technologists, that such studies were not performed "by a physician or under the direct or general supervision of a physician credentialed in vascular technology," and that Baptist did not have a laboratory "accredited in vascular technology." (*Id.* ¶¶ 34-36.) His most particular allegation is that "approximately 42% of the noninvasive vascular diagnostic studies" performed at Baptist between June 15 and November 9, 2011 "were not performed by a physician or under the general supervision of a physician credentialed in vascular technology, a credentialed vascular technologist, or at a laboratory accredited in vascular technology." (*Id.* ¶¶ 39, 41, Ex. G.) He alleges that noninvasive vascular diagnostic studies were performed on "Medicare eligible patients" (*id.* ¶¶ 38, 45-46), and that Baptist's billing software "had no mechanism for ultrasound technicians to indicate if the noninvasive vascular diagnostic study was performed by a credentialed technician" (*id.* ¶ 49). No specific claim to Medicare nor any specific Medicare patient is identified.

Based on these alleged facts, McMullen speculates that "a significant number of Medicare claims for noninvasive vascular diagnostic studies submitted by Baptist Hospital to [Cigna] and/or [WPS], did not qualify for Medicare reimbursement." (*Id.* ¶ 42.) McMullen further asserts "upon information and belief" that Medicare reimbursed Baptist over $350,000 per year since at least 2005 for studies he views as not qualifying for reimbursement. (*Id.* ¶ 50.) No facts are alleged to support this admitted "estimate."

This is as particular as McMullen's allegations get. The Amended Complaint ignores Ascension's prior motion to dismiss and continues to wrongly assert without factual bases that Ascension "operates" health care facilities nationwide. (*See*, *e.g.*, *Id.* ¶¶ 2, 21-25.) McMullen

does not allege that Ascension had any involvement in billing or claims submission at any of the Defendant hospitals or that he has any personal knowledge of those processes. Instead, he speculates that *if* Hickman and Middle Tennessee "operated similar to Baptist," "Ascension Health would have received over $1,000,000 in Medicare reimbursements per year for noninvasive vascular diagnostic studies performed by non-accredited and/or non-certified technicians." (*Id.* ¶ 28.) But, of course, no facts are alleged to suggest that the operations at these facilities were "similar" to those alleged to exist at Baptist.

Finally, as to Hickman and Middle Tennessee, McMullen offers only that he "is aware" that neither facility "has physicians who are credentialed in noninvasive vascular diagnostic studies," or has a laboratory "accredited in vascular technology." (*Id.* ¶ 37.) He asserts that Middle Tennessee "uses non-certified technicians to perform noninvasive vascular diagnostic studies," but makes no such allegation as to Hickman. (*Id.*)

Based on these limited factual and conjectural allegations, McMullen asserts that all of the Defendants "knowingly presented or caused to be presented false or fraudulent claims for payment from Medicare." (*Id.* ¶ 57.) He also alleges that all Defendants "presented or caused to be presented the false and/or fraudulent claims or false records for payment or approval." (*Id.* ¶ 60.) No claims and no records are identified in the Amended Complaint. Nor are facts provided to support the conclusory allegation that claims were submitted "knowingly."

## C. The Medicare Program

Medicare is a federal health insurance program available to most people over the age of 65 and certain people with disabilities or end-stage renal failure. *See* 42 U.S.C. § 1395c. Medicare is divided into several parts; relevant here are Parts A – which covers acute and long-term inpatient hospital care – and Part B – which covers physician services and hospital outpatient and observation care. *See id.* §§ 1395c, 1395k(a)(2)(B). Parts A and B both cover

medically necessary noninvasive vascular diagnostic studies. *See id.* §§ 1395x(b)(3), 1395x(s)(2)(C).

The Centers for Medicare and Medicaid Services ("CMS") is responsible for administering Medicare. To do so, CMS contracts with private entities to, among other things, receive and review claims and make payments to providers for covered services. *See id.* §§ 1395h, 1395kk-1(a); *see also* Am. Compl. ¶ 10. Beginning in mid-2007, CMS began consolidating the administration of Parts A and B into 15 regional A/B Medicare Administrative Contractors ("A/B MACs"). *See* Medicare Prescription Drug, Improvement and Modernization Act of 2003, Pub. L. No. 108-173 § 911, 117 Stat. 2066 (2003), codified at 42 U.S.C. § 1395kk-1. Before the creation of A/B MACs, CMS contracted with Fiscal Intermediaries ("FIs") to process Medicare Part A claims as well as claims for "[m]ost Part B services from providers that furnish Part A services." CMS, Medicare Claims Processing Manual ("MCPM"), Pub. 100-04, Chap. 1 § 10.2 (Rev. 1, Oct. 1, 2003), *available at* http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs.html; *see also* Am. Compl. ¶ 10. In contrast, "Carriers" processed Part B claims by physicians, independent diagnostic testing facilities, and ambulatory surgical centers (but not hospitals). MCPM § 10.1 (Rev. 1, Oct. 1, 2003).

CMS is authorized to determine that payment may not be made by Medicare for an item or service. *See* 42 U.S.C. § 1395ff(a). CMS may make such determinations through a National Coverage Determination ("NCD"), which is "binding" on all Medicare claims contractors, as well as on administrative law judges ("ALJs") considering appeals from claim denials. *See id.* § 1395ff(f); *id.* § 1395y(a)(1)(A); 42 C.F.R. § 405.1060. If CMS has not issued a relevant NCD, A/B MACs (and their predecessors, FIs and Carriers) may issue LCDs to establish their own

coverage provisions regarding a good or service. *See* 42 U.S.C. § 1395ff(f)(2)(B).[6] LCDs, however, are not published regulations, do not set national standards, and often differ among contractors. Indeed, to the extent the Amended Complaint specifically describes any LCDs, it alleges that the LCDs issued by Cigna and WPS relating to noninvasive vascular diagnostic studies differed from those issued by Cahaba. (*Compare* Am. Compl. ¶ 18, *with id.* ¶ 19.)

## ARGUMENT

McMullen's Amended Complaint alleges that Defendants violated Sections 3729(a)(1), (a)(2), and (a)(3) of the FCA. The "basis for a *qui tam* [FCA] action is *fraud* in the filing of claims against the government." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). Accordingly, "[c]omplaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity[.]" *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011).

A complaint also may be dismissed under Federal Rule of Civil Procedure 12(b)(6) when it fails to state a claim upon which relief can be granted. *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008). While less exacting than Rule 9(b), Rules 8(a)(2) and 12(b)(6) nevertheless require that a complaint articulate a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). For the reasons detailed below, McMullen does not, and cannot, meet any of these well-established pleading standards.

---

[6] Prior to 2003, Medicare contractors issued Local Medical Review Policies ("LMRPs"), which served largely the same purpose as LCDs. Medicare Program: Review of National Coverage Determinations and Local Coverage Determinations, 68 Fed. Reg. 63,692, 63,693 (Nov. 7, 2003) ("Review of NCDs and LCDs").

8

## I. THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD THAT ANY DEFENDANT KNOWINGLY PRESENTED OR CAUSED THE PRESENTATION OF FALSE CLAIMS.

Section 3729(a)(1)(A) of the FCA prohibits "knowingly present[ing] or caus[ing] to be presented a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A) (2009).[7] Sixth Circuit precedent is clear that to plead an FCA violation under this section, a plaintiff must allege "(1) 'the time, place, and content of the alleged misrepresentation,' (2) 'the fraudulent scheme,' (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough*, 655 F.3d at 467 (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) ("*Bledsoe II*")). Despite amending his complaint in implicit acknowledgement of the numerous pleading deficiencies identified in Ascension's prior motion to dismiss, McMullen still fails to adequately allege these required elements.

### A. The Amended Complaint Does Not Plead a Claim Against Baptist.

McMullen worked at Baptist between September 2011 and July 2012. (Am. Compl. ¶ 33.) He does not allege he worked at Ascension or at any other Defendant hospital. Presumably, then, to the extent McMullen has any factual knowledge regarding any of the Defendants, it is about Baptist. Yet, the Amended Complaint fails to adequately allege any FCA violation by Baptist as demonstrated below.

---

[7]     The Fraud Enforcement and Recovery Act ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (2009), renumbered the provisions at issue in this case as Section 3729(a)(1)(A), (a)(1)(B), and (a)(1)(C) and substantively amended their language. FERA generally applies to conduct occurring after May 20, 2009, and the amendment to Section 3729(a)(1)(B) specifically applies to civil actions or cases pending on or after June 7, 2008. *Id.* § 4(f)(1), 123 Stat. at 1625; *see also Sanders v. Allison Engine Co.*, 703 F.3d 930 (6th Cir. 2012). As the Complaint was filed in May 2012, we refer to the Sections of the FCA as amended by FERA, rather than as identified in the Amended Complaint. We note, however, that to the extent the Amended Complaint purports to allege FCA violations "since at least 2008 and possibly since 2002," (Am. Compl. ¶ 2), conduct occurring prior to May 20, 2009 would be governed by the pre-FERA FCA provisions.

### 1. No Fraudulent Scheme By Baptist Is Alleged With Particularity.

Under Rule 9(b), McMullen must allege with particularity facts to support the existence of "a scheme that constitutes 'fraud' within the meaning of the FCA."  *See Chesbrough*, 655 F.3d at 467.  A claim is only actionable under the FCA if the defendant "aimed to extract from the government 'money the government otherwise would not have paid.'"  *Id.* (quoting *Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001)).  An FCA plaintiff may plead a fraudulent scheme by alleging the submission of a claim that was either "factually false" or "legally false."  *See United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008).  Claims are "factually false" if they provide an "'incorrect description of goods or services provided or a request for reimbursement for goods or services never provided."  *Id.* (quoting *Mikes*, 274 F.3d at 697).  Here, McMullen does not allege that Baptist billed Medicare for noninvasive vascular diagnostic tests that were not actually performed.  Thus, he does not allege the submission of a factually false claim.

Claims also may be "legally false" under an express "false certification" theory when the claimant knowingly and "expressly states that [the claim] complies with a particular statute, regulation, or contractual term that is a prerequisite for payment[.]"  *Chesbrough*, 655 F.3d at 467.  McMullen, however, does not allege that Baptist expressly certified compliance with any "statue, regulation, or contractual term," or even that it certified compliance with the alleged LCD "reimbursement criteria."  Consequently, he does not allege an express false certification by Baptist.

The Sixth Circuit has also recognized that a claim also may be "legally false" under an "'implied certification'" theory where the "'claimant violates its continuing duty to comply with the regulations on which payment is conditioned.'"  *Chesbrough*, 655 F.3d at 468 (quoting *United States ex rel. Augustine v. Century Health Servs., Inc.*, 289 F.3d 409, 415 (6th Cir. 2002)).

To plead an implied certification claim, "a relator cannot merely allege that a defendant violated a standard—he or she must allege that compliance with the standard was required to obtain payment." *Chesbrough*, 655 F.3d at 468. McMullen does not adequately allege the violation of any regulatory standard, much less that compliance with such a standard was a condition of payment. He does not identify which of the alleged LCDs or LCD criteria he varyingly describes throughout the Amended Complaint purportedly applied to Baptist's claims at which points in time.[8] Indeed, McMullen does not even allege facts to suggest that *any* specific LCD was effective or binding on Baptist's claims at any time. (*See id.* ¶¶ 18-19 ("*Upon information and belief*, *similar* LCDs governing the reimbursement criteria for the service of providing noninvasive vascular diagnostic studies *may* have been applicable since at least 2005") (emphasis added).)

McMullen alleges in conclusory terms that varying LCDs established "reimbursement criteria" for noninvasive vascular diagnostic studies, but he does not identify any provision of any LCD conditioning payment on compliance with the alleged physician credentialing,

---

[8]     The Amended Complaint variably alleges Baptist's claims for noninvasive vascular diagnostic studies were false or fraudulent because they were not "supervised by a physician credentialed in vascular technology" (Am. Compl. ¶ 2), not "performed by . . . or under the general supervision of a physician credentialed in vascular technology" (*id.* ¶¶ 26, 39, 46, 52), not under the "general supervision of physicians certified in vascular technology" (*id.* ¶¶ 27, 36), not "under the direct or general supervision of a physician credentialed in vascular technology" (*id.* ¶ 34), and "improperly performed and improperly interpreted by persons not credentialed in vascular technology" (*id.* ¶ 51). The variances in the alleged LCD "criteria" are significant because CMS regulations define "general" and "direct supervision" disparately. *See* 42 C.F.R. § 410.32(b)(3)(i) ("General supervision means the procedure is furnished under the physician's overall direction and control, but the physician's presence is not required during the performance of the procedure."); 42 C.F.R. § 410.28(e)(1) ("direct supervision" "in the hospital or in an on-campus or off-campus outpatient department of the hospital, . . ., means that the physician must be immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room where the procedure is performed.").

technologist certification or lab accreditation criteria.[9]  Nor does McMullen allege facts establishing that any LCD required Baptist to identify a physician's credentials, a technologist's certifications, or any lab accreditation on or with its Medicare claims as a condition of payment.

The Amended Complaint is wholly devoid of any facts demonstrating that, if Baptist made claims to Medicare for noninvasive vascular diagnostic studies, such claims manifested a false implied certification of compliance with a specific LCD.  McMullen's vague allegations do not plead a "fraudulent scheme" at all, let alone with the particularity required by Rule 9(b).

### 2. None Of The LCDs Identified In The Amended Complaint Applied To Baptist Or Constituted A Condition Of Payment.

Even assuming that McMullen's conclusory allegations adequately pled that Baptist's claims for noninvasive vascular studies did not comply with LCDs issued by Cigna, WPS, or Cahaba, as a matter of law, none of those LCDs applied to Baptist's claims during the time period at issue.  And, none was a condition of payment as a matter of law.

First, during the time in question, Cigna was a Medicare Carrier for Tennessee, not a fiscal intermediary ("FI").  (*See* Ex. 3, CMS A/B MAC Background Sheet Jurisdiction 10 ("CMS Background Sheet").)[10]  As the Amended Complaint concedes (*see* Am. Compl. ¶ 10),

---

[9]    In a passing sentence, McMullen represents that CMS "promulgated requirements regarding credentials in an effort to stem unreasonable and unnecessary studies." (Am. Compl. ¶ 54.)  CMS has promulgated no such requirements.  In fact, in response to the Government Accountability Office Report referenced in Amended Complaint (*see id.* ¶ 54), CMS expressly declined to issue such regulations and deferred to local state licensing boards and the Joint Commission that accredits hospitals to determine the competency of ultrasonographers performing noninvasive vascular studies.  (Ex. 4, GAO Report at Appx. VI, p. 61-63.)

[10]    The Court may take judicial notice of this fact which is integral to the Amended Complaint, publicly known, and capable of accurate and ready determination though governmental information sources.  Fed. R. Evid. 201(b); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n.1 (6th Cir. 2005) (taking judicial notice of information posted on the website of the National Association of Securities Dealers, Inc.).

before the creation of Part A and Part B Medicare Administrative Contractors ("A/B Macs"), hospitals like Baptist submitted Medicare claims for both Part A and B services to FIs, not to Carriers. *See* MCPM Chap. 1 § 10.2. Any Cigna LCD relating to noninvasive vascular diagnostic studies therefore was not applicable to services billed by Baptist because Cigna did not process or have jurisdiction over Baptist's claims. *See* MCPM Chap. 1 § 10.2. (noting that FI's "have jurisdiction" over all Part A services, including services furnished by hospitals, and "most Part B services from providers that furnish part A services"); *see also* Medicare Program Integrity Manual, Pub No. 100-08, Chap. 13 § 13.5 (Rev. 473, Effective: Jan. 15, 2013) ("Contractors shall ensure that LCDs are developed for items or services *only within their jurisdiction*.") (emphasis added), *available at* http://www.cms.gov/Regulations-and-Guidance/ Guidance/Manuals/Internet-Only-Manuals-IOMs.htm.

Second, contrary to McMullen's suggestion that Baptist submitted claims to WPS, before August 2009, Riverbend Government Benefits Administrator ("Riverbend") was Baptist's FI, to which it submitted Medicare claims. (*See* Ex. 3, CMS Background Sheet; MCPM Chap. 1 § 10.2.)[11] Accordingly, as with Cigna, any LCD issued by WPS was not applicable to services provided by Baptist because WPS had no jurisdiction over Baptist's claims. Third, Riverbend did have an LCD applicable to noninvasive vascular diagnostic services between December 27, 1996 and August 2, 2009, but Riverbend's LCD did not contain any technologist qualification, physician supervision, or lab accreditation criteria as either a condition of payment or a condition of participation. (*See generally* Ex. 5, Riverbend LCD L1352.)

---

[11] The Court likewise may take judicial notice of this fact pursuant to Federal Rule of Evidence 201(b). Although Ascension's prior motion to dismiss highlighted this irrefutable fact (*see* Dkt. 35 at 22-23), McMullen wholly ignores it in his Amended Complaint presumably because he has no response and it dooms his claims.

13

In 2009, Cahaba began serving as the A/B MAC for Jurisdiction 10, and assumed Riverbend's role in processing Part A provider claims in Tennessee in August 2009. (*See* Ex. 3, CMS Background Sheet; Ex. 5 Riverbend LCD L1352 at 24 (noting that LCD L1352 was retired on August 2, 2009 "due to the transition from FI Riverbend GBA (00390) to MAC - Part A Cahaba GBA (10301)".) Between August 2, 2009 and August 1, 2012, Cahaba had no LCD applicable to noninvasive vascular diagnostic studies furnished at Part A providers, including Baptist, and the Amended Complaint does not allege that Cahaba did. While the Amended Complaint cites Cahaba LCDs L30040 and L30041, those LCDs apply only to Medicare Part B providers, not hospitals such as Baptist. (*See* Am. Compl., Ex. A at 45-46 (noting LCDs L30040 and L30041 are applicable to "Contractor Type: MAC – Part B.")).[12] Because no LCD applied to Baptist's claims for noninvasive vascular diagnostic studies at any point during McMullen's tenure at Baptist, his allegations regarding the conditions under which studies were performed during his time there are of no legal consequence. (*See id.* ¶¶ 34-36, 39-42, 44-53).

Finally, even if the LCD provisions McMullen relies upon did apply to Baptist, LCDs do not have the force and effect of law.[13] *United States v. Prabhu*, 442 F. Supp. 2d 1008, 1032-33 (D. Nev. 2006) (holding that claims that did not comply with a Medicare contractor's Local Medical Review Policy ("LMRP") could not be false as a matter of law because, unlike applicable statutes and regulations, LMRPs do not establish "controlling" standards). LCDs are

---

[12] Even the Cahaba LCDs referenced in the Amended Complaint do not include the type of physician certification or credentialing requirements that McMullen variably describes throughout the Amended Complaint. (*See* Am. Compl., Ex. A at 45-46.)

[13] As the Amended Complaint admits, LCDs are simply "administrative and educational tools" published by private Medicare administrative contractors "to assist providers in submitting correct claims for payment." (Am. Compl. ¶ 14); *see also* Review of NCDs and LCDs, 68 Fed. Reg. at 63,693.

neither regulations nor National Coverage Determinations ("NCDs"), and are not binding during the administrative appeals process or on a federal court reviewing a coverage determination for services provided to a Medicare beneficiary. *See* 42 C.F.R. § 405.1062(a); *see also Willowood of Great Barrington, Inc. v. Sebelius*, 638 F. Supp. 2d 98, 106 (D. Mass. 2009). Indeed, "an ALJ may rule that Medicare payment is due on a particular item or service received by a beneficiary . . . even if the contractor's LMRP or LCD clearly prohibits payment for the particular service." Review of NCDs and LCDs, 68 Fed. Reg. at 63,693. As the Sixth Circuit recently recognized in a case dealing with similar standards, the quality of care provisions in the LCD excerpts cited in Amended Complaint establish "conditions of participation" that are not actionable under a false certification theory. *United States ex rel. Hobbs v. MedQuest Assocs.*, 711 F.3d 707, 714 (6th Cir. 2013). Therefore, even if a noninvasive vascular diagnostic study performed on a Medicare beneficiary did not comport with the terms of an actual, applicable LCD, if that study was determined by the beneficiary's treating physician to be medically necessary and reasonable, any noncompliance cannot form the basis of a "fraudulent scheme" as a matter of law. And, McMullen fails to allege that any noninvasive vascular diagnostic studies performed at Baptist, Hickman or Middle Tennessee were not medically reasonable and necessary as determined by a beneficiary's treating physician.

### 3. The Amended Complaint Does Not Allege Presentment Of Even A Single False Claim By Baptist.

Separate and apart from its failure to adequately plead a "fraudulent scheme," the Amended Complaint also must be dismissed because it fails to allege even a single false claim was presented for payment. As the Sixth Circuit has repeatedly held, "pleading an actual false claim with particularity is an indispensable element of a complaint that alleges a FCA violation in compliance with Rule 9(b)." *Bledsoe II*, 501 F.3d at 504; *see also Chesbrough*, 655 F.3d at

467 (the alleged "misrepresentation" is the presentment of a false claim for payment by the Federal government). Indeed, "the fraudulent claim is 'the *sine qua non* of a False Claims Act violation.'" *Sanderson*, 447 F.3d at 878 (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).

Ascension's prior motion to dismiss highlighted McMullen's failure to identify any fraudulent claim with particularity. The Amended Complaint does not cure this failing; it still lacks any allegation of "which specific false claims constitute a violation of the FCA." *Bledsoe II*, 501 F.3d at 505. Instead, McMullen attempts to plead around this indispensable element by surmising that "a significant number of Medicare claims for noninvasive vascular diagnostic studies submitted by Baptist Hospital to [Cigna] and/or [WPS], did not qualify for Medicare reimbursement." (Am. Compl. ¶ 42.)[14] Such FCA pleading tactics by relators have been soundly and repeatedly rejected. "[W]hen a defendant's actions, as alleged and as reasonably inferred from the allegations, *could* have led, but *need not necessarily* have led, to the submission of false claims, a relator must allege with particularity that specific false claims actually were presented to the government for payment." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013) (emphasis in original). Thus, even if McMullen were correct that noninvasive vascular diagnostic studies performed under the conditions he alleges would not qualify for Medicare reimbursement, his Amended Complaint is insufficient because it does not allege with particularity that claims for such studies actually were submitted to Medicare.

For example, McMullen alleges that on certain shifts Baptist did not staff an

---

[14]     As discussed in Section I.A.2. above, this allegation is nonsensical as Baptist did not submit claims to either Cigna or WPS.

ultrasonographer certified in vascular technology.  (Am. Compl. ¶¶ 47-48.)  But he does not allege any noninvasive vascular ultrasounds were performed on Medicare patients during these shifts or that Baptist billed Medicare for such procedures.  Likewise, McMullen asserts that "approximately 42% of the noninvasive vascular diagnostic studies" performed at Baptist during an 82-day period "were not performed by a physician or under the general supervision of a physician credentialed in vascular technology, a credentialed vascular technologist, or at a laboratory accredited in vascular technology."  (Am. Compl. ¶¶ 39, 41, Ex. G.)  Again however, he does not allege that Medicare was billed for any of these studies.

Apparently recognizing this factual gap, McMullen alleges that, in his experience, noninvasive vascular diagnostic studies are commonly performed on older patients (*id.* ¶ 38) and that he knew patients were Medicare-eligible because he reviewed their medical information (*id.* ¶¶ 44-46).  But Medicare-eligible patients are not necessarily *enrolled* in Medicare.  And, by law, Medicare acts as a secondary payer and does not pay claims that a beneficiary is eligible to have paid under another health insurance program.  42 U.S.C. § 1395y(b)(2)(A).  As a result, even where a patient is enrolled in Medicare, it does not follow that every service provided to that patient necessarily was billed to Medicare.  Rather, to conclude from McMullen's allegations "that a claim was [actually] presented requires a series of assumptions."  *Chesbrough*, 655 F.3d at 472.  At the most basic level, "one must assume that the tests were performed on Medicare . . . patients and could therefore have been billed to the government."  *Id.*

McMullen offers no factual basis that would justify these assumptions.  In the end, McMullen offers no details that might raise his allegations beyond the realm of assumption and speculation, such as "dates on which the purportedly false [claims] were submitted, . . . who submitted the purportedly false [claims], . . . [or] any other 'specific information about the

[claims] allegedly submitted.'" *Marlar*, 525 F.3d at 446 (quoting *Bledsoe II*, 501 F.3d at 512-13). He attempts to avoid scrutiny of this shortcoming by offering "estimates" (Am Compl. ¶¶ 40, 43) and conjecture pled "upon information and belief" (*id.* ¶ 50) regarding Medicare reimbursements purportedly received by Baptist. But McMullen offers no factual basis to support his beliefs, and speculation piled upon speculation is not sufficient. *Sanderson*, 447 F.3d at 878 (the "information and belief" "exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations") (internal quotation omitted). Accordingly, the Amended Complaint must be dismissed as to Baptist, as it offers no grounds for believing the hospital actually submitted false claims to Medicare for noninvasive vascular diagnostic studies.

### 4. The Amended Complaint Does Not Adequately Allege Scienter.

Under the FCA, "[t]he requisite intent is the knowing presentation of what is known to be false, as opposed to negligence or innocent mistake." *Mikes*, 274 F.3d at 703 (internal quotation omitted); *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999) ("violations of [federal] regulations are not fraud unless the violator knowingly lies to the government about them").

The Amended Complaint includes no factual allegations against Baptist with respect to the scienter element of the FCA. Merely parroting the FCA's statutory language, McMullen avers that "[d]espite CIGNA's Article for Noninvasive Vascular Studies and the corresponding NCDs and LCDs, Defendants acted with actual knowledge, deliberate ignorance of the truth, or reckless disregard for the truth or falsity in presenting inaccurate, false, and unsubstantiated claims for Medicare reimbursement." (Am. Compl. ¶ 58.) This sentence is emblematic of the problems with the Amended Complaint. First, McMullen never alleges CMS issued an NCD establishing "reimbursement criteria" for noninvasive vascular studies, and in fact, no such NCD exists. Second, because Cigna was a Medicare carrier, no Cigna Article or LCD applied to any

Defendants' claims.  And third, an "Article," which McMullen neither describes nor attaches, does not set Medicare reimbursement requirements.  Given its abject failure to allege facts establishing scienter, the Amended Complaint should be dismissed.

**B.    The Amended Complaint Does Not Plead a Claim Against Hickman or Middle Tennessee.**

McMullen's claims against Hickman and Middle Tennessee are premised on his conclusory allegation that these facilities billed Medicare for noninvasive vascular diagnostic studies that "did not qualify for reimbursement."  (Am. Compl. ¶¶ 26-27.)  On these points, the Amended Complaint is a factual vacuum.  McMullen states that he "is aware" that neither facility has "physicians credentialed in noninvasive vascular diagnostic studies," or a laboratory accredited in vascular technology, and that he has "personal knowledge that Middle Tennessee" uses non-certified technicians to perform noninvasive vascular diagnostic studies.  (*Id.* ¶ 37.)  He does not, however, identify the basis of this purported knowledge or any specific facts to support these allegations.

By his own admission, McMullen "worked for Baptist" (*id.* ¶ 33), not Hickman or Middle Tennessee.  McMullen's allegations against Hickman and Middle Tennessee therefore have no more factual basis and are no more plausible, than his claims of fraud against the 534 other facilities allegedly affiliated with Ascension that McMullen dropped by amending his complaint.  *See Bledsoe II*, 501 F.3d at 512 (even where fraud is pled on "information and belief[,]" "the plaintiff must still set forth the factual basis for his belief.'" (quotations omitted); *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (a court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.") (citations and internal quotations omitted).  Lacking any factual basis, McMullen's allegations against Hickman and

Middle Tennessee deserve no credence.

Moreover, even if McMullen offered a factual basis for his assertions regarding Hickman and Middle Tennessee, he still does not identify or describe even a single false claim actually presented to Medicare by either facility. Without this "'*sine qua non* of a False Claims Act violation,'" McMullen cannot meet the requirements of Rule 9(b). *Sanderson*, 447 F.3d at 878 (quoting *Clausen*, 290 F.3d at 1311). His claims against Hickman and Middle Tennessee also fail to plead a "fraudulent scheme" for the reasons discussed above with respect to Baptist: McMullen does not allege that any LCD was a condition of payment by Medicare, he does not identify the allegedly applicable LCDs, and, as a matter of law, the LCDs he refers to did not apply to Hickman or Middle Tennessee and cannot form the basis for an FCA claim.[15] For all of these reasons, McMullen's claims against Hickman and Middle Tennessee must be dismissed.

**C.      The Amended Complaint Does Not Plead Any FCA Violation By Ascension.**

"[M]erely '[b]eing a parent corporation of a subsidiary that commits a FCA violation, without some degree of participation by the parent in the claims process, is not enough to support a claim against the parent for the subsidiary's FCA violation.'" *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 59-60 (D.D.C. 2007) (quoting *United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.*, Nos. 5:00-CV-39-M & 5:99-CV-170-M, 2004 WL 2403114, at *33 (W.D. Ky. Sept. 30, 2004)); *see also United States ex rel. West v. Ortho-McNeil Pharm., Inc.*, No. 03 C 8239, 2007 WL 2091185, at *5 (N.D. Ill. July 20, 2007) (dismissing FCA action against a corporate parent because the complaint did not set forth facts

---

[15]      As with Baptist and most, if not all, other hospital providers in Tennessee, before August 2009, Hickman and Middle Tennessee submitted Medicare claims to Riverbend, as the applicable Medicare FI, not WPS. (*See* Ex. 3, CMS Background Sheet.) McMullen does not expressly allege otherwise nor could he truthfully do so.

plausibly suggesting a cause of action).  Accordingly, to state a claim against Ascension under Section 3729(a)(1)(A), McMullen must allege facts that make it plausible that Ascension either presented or caused to be presented false or fraudulent claims for payment.  Like his original complaint, McMullen's Amended Complaint does neither.

The Amended Complaint perpetuates McMullen's factually unsupported assertion that Ascension "operates" more than 500 facilities nationwide, including Baptist, Hickman and Middle Tennessee.  (Am. Compl. ¶¶ 2, 21-25, 33.)   As Ascension explained in its prior motion to dismiss, this unsupported allegation is belied by Ascension's legal status, of which the Court may take judicial notice for purposes of this Motion.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("matters of which a court may take judicial notice" may be considered on a Rule 12(b)(6) motion; *see also* Fed. R. Evid. 201(b) (courts may take judicial notice of "a fact that is not subject to reasonable dispute" because it is capable of accurate and ready determination "from sources whose accuracy cannot reasonably be questioned").[16]

McMullen's Amended Complaint also contradicts his original allegations, as he now asserts that he was "an employee of Ascension" and that Ascension "is the controlling entity of

---

[16]    State public records of Ascension's corporate formation and authorization and its publicly available audited financial statements establish that Ascension is a Missouri domestic nonprofit corporation that serves a function akin to that of a stock holding company for a number of nonprofit corporations across the country.  (*See* Ex. 2 at Art. II § 2.1.1 (Ascension is organized for, among other purposes, to "[s]erve as the parent corporation for Health Ministries sponsored by Ascension Health Ministries."); Ex. 1 at 8.)  One of these nonprofit corporations is Saint Thomas Health, which in turn owns and/or operates Baptist, Hickman and Middle Tennessee. (Ex. 6, Amended Charter of St. Thomas Baptist Health Corporation at 3 (Ascension Health is the sole corporate member of St. Thomas Baptist Health Corporation).)  The Court may take judicial notice of these publicly filed and publicly available documents.  *See Arvest Bank v. Byrd*, 814 F. Supp. 2d 775, 787 n.4 (W.D. Tenn. 2011) (taking judicial notice of information listed on the Arkansas Secretary of State's website); *EEOC v. Jeff Wyler Eastgate, Inc.*, No. 1:03CV662, 2006 WL 2785774,  at *2-3 (S.D. Ohio Jan. 9, 2006) (taking judicial notice of official documents from the Ohio, Kentucky, and Indiana Secretary of State).

Baptist" and the other Defendants. (Am. Compl. ¶ 30; *see also id.* ¶¶ 31-32.) At bottom, this is merely an allegation that Ascension is a corporate parent and is insufficient to support an independent claim against it. *Hockett*, 498 F. Supp. 2d at 59-60. At most, the W-2 form that McMullen provides indicates on its face that "Ascension Health" paid McMullen in its role as a "shared services agent" *for Baptist*. (Am. Compl., Ex. F.)

In any event, whether Ascension employed McMullen is irrelevant to whether the Amended Complaint alleges facts to support McMullen's assertion that Ascension presented or caused to be presented false or fraudulent claims for payment. On that question, McMullen offers no credible facts to support his conclusory allegations that Ascension "presented false claims to Medicare" (Am. Compl. ¶ 2; *see also id.* ¶¶ 57-60); rather, the Amended Complaint is silent as to how Ascension allegedly did so. At most, it offers the vague assertion that Ascension "is in the business of providing medical services for patients." (*Id.* ¶ 5.) But the Amended Complaint contradicts this by alleging that only Baptist, Hickman and Middle Tennessee – not Ascension – "have billed Medicare for noninvasive vascular diagnostic studies" and "have presented false claims to Medicare." (*See id.* ¶¶ 26-27; *see also id.* ¶ 42 ("a significant number of Medicare claims for noninvasive vascular diagnostic studies submitted *by Baptist Hospital* . . . did not qualify for Medicare reimbursement") (emphasis added).)

And, like McMullen's original complaint, the Amended Complaint is silent as to how Ascension allegedly "caused" Baptist, Hickman or Middle Tennessee to submit false claims. The Amended Complaint offers no facts connecting Ascension to any such claims and no facts showing Ascension caused such claims to be submitted. Again, merely being the corporate "parent" is insufficient. *Hockett*, 498 F. Supp. 2d at 59-60. An FCA claim "requires some affirmative participation or action by [Ascension] that furthers the unlawful objective" to submit

false or fraudulent claims for payment. *United States ex rel. Lisitza v. Par Pharm. Cos.*, No. 06-C-06131, 2013 WL 870623, at *5 (N.D. Ill. Mar. 7, 2013). Here, the Amended Complaint alleges no facts suggesting that Ascension played any role in the alleged submission of false claims, and therefore offers no factual predicate for FCA liability on the part of Ascension.

## II. THE AMENDED COMPLAINT FAILS TO IDENTIFY ANY FALSE RECORD OR STATEMENT BY ANY DEFENDANT.

Section 3729(a)(1)(B) of the FCA prohibits "knowingly [making, using, or causing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B)(2009). To plead a claim under Section 3729(a)(1)(B) with the particularity required by Rule 9(b), McMullen "must provide sufficient details regarding the time, place and content of [the] alleged false statements, [the] claim for payment . . . , and the manner in which the false statements" were material to a false or fraudulent claim. *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 505 (6th Cir. 2008) (stating pleading requirements under pre-FERA Section 3729(a)(2)). McMullen's Amended Complaint does none of these things.

The full extent of McMullen's allegations regarding Section 3729(a)(1)(B) is his formulaic conclusory assertion that Defendants "submitted or caused to be submitted and presented or caused to be presented the false and/or fraudulent claims or false records for payment or approval." (Am. Compl. ¶ 60.) Although Ascension described this statement as "garbled" in its prior motion to dismiss, McMullen has not clarified it, nor identified any "false record or statement" anywhere in the Amended Complaint. He certainly does not provide "details regarding the time, place and content" of any false statement or any false or fraudulent claims. *SNAPP*, 532 F.3d at 505. Accordingly, McMullen's claim against all the defendants under Section 3729(a)(1)(B) must be dismissed.

## III. THE AMENDED COMPLAINT DOES NOT IDENTIFY THE ELEMENTS OF A CONSPIRACY.

To adequately plead a violation Section 3729(a)(1)(C), a plaintiff must allege with particularity a conspiracy "to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)" of Section 3729(a)(1). 31 U.S.C. § 3729(a)(1)(C); *see also Marlar*, 525 F.3d at 444-45 (Rule 9(b)'s heightened pleading standard applies to claims under pre-FERA Section 3729(a)(3)). "The essence of a conspiracy under the Act is an agreement between two or more persons to commit a fraud." *United States ex rel. Piacentile v. Sanofi Synthelabo, Inc.*, No. 05-2927, 2010 WL 5466043 at *9 (D.N.J. Dec. 30, 2010) (internal quotations omitted). "Under Rule 9(b), general allegations of a conspiracy, without supporting facts to show when, where or how the alleged conspiracy occurred, amount to only a legal conclusion and are insufficient to state a cause of action." *United States ex rel. Dennis v. Health Mgmt. Assocs.,* No. 3:09-cv-00484, 2013 WL 146048, at *17 (M.D. Tenn. Jan. 14, 2013). To establish a conspiracy under Section 3729(a)(1)(C), McMullen "must show (1) that there was a single plan to [violate the FCA], (2) that the alleged coconspirators shared in the general conspiratorial objective. . . , and (3) that one or more conspirators performed an overt act in furtherance of the conspiracy[.]" *United States ex rel. Judd v. Maloy*, No. 3:03-CV-241, 2006 WL 2583318, at *9 (S.D. Ohio Sept. 6, 2006).

Although McMullen's "Claim for Relief" is framed as one for "Violation of 31 § [sic] U.S.C. 3729(a)(1), (a)(2), (a)(3)," he offers no allegations whatsoever regarding any purported conspiracy. McMullen's Amended Complaint fails to identify any "conspirators," let alone identify an alleged plan to violate the FCA or overt acts taken in furtherance of such a plan. McMullen therefore cannot pursue a cause of action under Section 3729(a)(1)(C).

## IV. THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE FURTHER AMENDMENT WOULD BE FUTILE.

McMullen filed his Amended Complaint in response to Ascension's prior motion to

dismiss, which highlighted the pleading and legal insufficiencies of McMullen's original complaint. McMullen's Amended Complaint, however, does not remedy the myriad deficiencies in the original complaint; to the contrary, it ignores most of them. McMullen's Amended Complaint thus demonstrates his inability to adequately plead a violation of the FCA, and as such, should be dismissed with prejudice. The Sixth Circuit has stated that whether to dismiss a complaint with prejudice is a matter of discretion, but that "'where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 644 (6th Cir. 2003) (*Bledsoe I*) (quoting *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir.1993)). McMullen has had that "one chance."

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss Relator's Amended Complaint. Because the Amended Complaint's deficiencies cannot be cured by amendment, the Amendment Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: August 20, 2013

/s/  Gregory M. Luce
GREGORY M. LUCE (ADMITTED PRO HAC VICE)
MAYA P. FLORENCE (ADMITTED PRO HAC VICE)
JAMES C. BUCK (ADMITTED PRO HAC VICE)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7000

THOR Y. URNESS (TENN. BAR NO. 13641)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street
Suite 700
Nashville, TN 37203-0025
Phone: (615) 244-2582

Fax: (615) 252-6380
Email:  turness@babc.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 20, 2013 the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to the following counsel of record:

Russell A. Wood
Wood Law Firm, P.A.
288 Eastland Drive
Memphis, TN 38111

Thomas P. Thrash
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201

John-David H. Thomas
Office of the United States Attorney
110 Ninth Avenue, S
Suite A961
Nashville, TN 37203-3870


_/s/_  Gregory M. Luce
Gregory M. Luce

27